Joel Ban #10114
Ban Law Office P.C.
P.O. Box 118
Salt Lake City, UT 84110
801-532-2447
joel@banlawoffice.com
*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STEVEN G. MAXFIELD and DANIEL NEWBY, BART GRANT, and LORI NEWBY,<br><br>    Plaintiffs,<br><br>vs.<br><br>SPENCER COX, in his official capacity as Governor of Utah, and DEIDRE HENDERSON, in her official capacity as Lieutenant Governor of Utah,<br><br>    Defendants. | **FIRST AMENDED COMPLAINT FOR EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF**<br><br>Case No. 4:21cv-00051-DN-PK<br><br>Honorable Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Plaintiffs complain and allege against Governor Spencer Cox and Lieutenant Governor Diedre Henderson in their official capacities, as follows:

### NATURE OF THE CASE AND PARTIES

1. This is a civil action for equitable, injunctive, and declaratory relief as Plaintiffs seek to secure their rights under the U.S. and Utah Constitutions to participate fully in the political and electoral process.

2. Plaintiff Steven Maxfield is an individual residing in Kanosh, Utah in Millard County.

1

3. Plaintiff Daniel Newby and Lori Newby are individuals residing in Taylorsville, Utah in Salt Lake County.

4. Plaintiff Bart Grant is an individual residing in Monroe, Utah in Sevier County.

5. Defendant Spencer Cox is the Governor of Utah.

6. Defendant Diedre Henderson is the Lieutenant Governor of Utah. In that capacity, she is also the chief election officer of Utah, *see* Utah Code § 67-1a-2(2)(a), and responsible for the enforcement of the Utah Election Code.

## JURISDICTION AND VENUE

7. Plaintiffs invoke this court's jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, in that this matter presents a federal question involving rights protected by the U.S. Constitution and federal statute.

8. The District of Utah represents a proper venue pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in the District of Utah.

## FACTUAL ALLEGATIONS

9. Utah's Constitution vests legislative power equally in both a representative legislature and in the people. The Utah Constitution requires the State to enact a statute authorizing the people to bring initiatives and referendums.

10. The Utah Constitution vests the initiative and referenda power in all "legal voters." The Utah Constitution permits reasonable and nondiscriminatory restrictions on that power.

11. During the 2021 general session, the Utah Legislature passed H.B. 136.

12. That law amended the Election Code to require that individuals paid to collect signatures be paid by the hour and wear badges identifying themselves as paid. The badge must disclose the name of the entity paying the signature gatherer to be printed on white paper, black ink, and 12

point type. Utah Code Ann. 20A-7-104(4)(a). The law does not impose this requirement on volunteer signature gatherers.

13. The law amended the election code so that a paid signature gatherer must disburse a paper document to be printed on white paper, black ink, 12 point type, to be given to each intiative/referendum signer a statement that the fiscal impact, and information on removing your signature from the petition can be viewed at a specific internet link. Utah Code Ann. 20A-7-104(5)(a-b). This requirement does not apply to volunteer signature gatherers.

14. HB 136 amended the election code so that paid signature gatherers must present a copy of the intiative/referendum and wait for the potential signer to read it, but is not required to do so if the potential signatory declines acceptance of the initiative/referendum. Utah Code Ann. 20A-7-104(6)(a).

15. The law also requires those canvassers to register with a governmental entity before they collect signatures.

16. Further, the Election Code imposes severe penalties on anyone violating these new rules that includes commission of a class B misdemeanor. Utah Code Ann. 20A-1-609(1)(a).

17. Specifically, the Election Code provides that anyone who violates the provisions cannot be elected to office during the election season of the violation; cannot hold such office if elected; and cannot be paid or collect other emoluments of the office. Utah Code Ann. 20A-1-609(2)(a-c).

18. Additionally, anyone convicted of violating the law will lose their right to vote. Utah Code Ann. 20A-1-609(3)(a).

19. H.B 136 does not apply to candidates, but only in the context of initiatives and referenda.

20. On March 10, 2021, Plaintiffs filed an application to refer H.B. 136 to referendum.

21.     On March 11, 2021, the Lieutenant Governor's Office rejected those applications in a letter to Maxfield.

22.     Plaintiffs filed suit, challenging the Lieutenant Governor's Office's actions.

23.     The parties settled that matter, agreeing to a court order requiring the Lieutenant Governor's Office to accept the application and allowing Plaintiffs to commence collecting signatures to seek to subject H.B. 136 to referendum on January 3, 2022.

24.     Plaintiffs intend to subject H.B. 136 to referendum under these stipulated procedures and deadlines.

25.     Plaintiffs have extensive experience in the initiative and referendum process in Utah.

26.     Maxfield drafted, and was the lead sponsor of, *the Anti-Bribery and Anti-Corruption Statewide Initiative* in 2010.

27.     In 2011, Maxfield served as the Chair to the Executive Committee of SAVE GRAMA which filed a referendum on HB 477 (2011) and brought enough political pressure to have the law withdrawn via special session.

28.     In 2014, Maxfield was a party in a successful election contest overturning the election in Millard County (<u>Cox v. Laycock</u>, 345 P.3d 689 (Utah 2015)).

29.     In 2018, Maxfield was involved in Proposition 2, the Referendum on HB 3001 passed during the special session that amended Proposition 2, and the subsequent extraordinary writ filed with the Utah Supreme Court (<u>Grant v. Herbert</u>, 449 P.3d 122 (Utah 2019)).

30.     Maxfield was also the sponsor of a land use initiative in Millard County that qualified for the ballot.

31.     Maxfield has worked closely with the other plaintiffs to advance a shared political view.

32. Maxfield seeks to associate with the other plaintiffs to sponsor the referenda related to H.B. 136.

32. Grant has personally gathered and managed the collection of tens of thousands of signatures for Citizen Initiatives in Utah.

33. In 1988 Grant was a supporter of Initiatives A, B, and C to Limit Taxes and Spending, Reduce Taxes, and provide for an Income Tax Credit for Private Education.

34. In 1990, as a volunteer, Grant collected thousands of signatures for the removal of State and Local Sales Tax from food.  In 1994 he was the Director of Utah Term Limits.  They placed the initiative for Term Limits and Election by Majority Vote (or Run-Off Elections) on the Utah ballot.

35. In 2000 Grant managed petition circulators in southern Utah for Initiatives A and B to make English the Official Language of Utah and for the *Utah Property Protection Act*.

36. In 2002 Grant managed petition circulators in southern Utah to qualify the *Radioactive Waste Restrictions Act*.

37. In 2011 Grant was a member of the Executive Committee of SAVE GRAMA which filed a referendum on HB 477 (2011) and brought enough political pressure to have the law withdrawn via special session.

38. In 2014 Grant managed petition circulators in central and southern Utah in the effort to qualify the *Count My Vote* initiative for the ballot.  This effort came up short due to an effort by opponents to remove signatures after they were submitted by their sponsor.

39. In 2018 Grant was involved in Proposition 2, the Referendum on HB 3001 passed during the special session altering Proposition 2, and the subsequent extraordinary writ filed with the Utah Supreme Court (Grant v. Herbert, 449 P.3d 122 (Utah 2019)).

40. Under the law, sponsors of referenda and initiatives have certain duties and rights and it is therefore critical that sponsors be able to associate with the correct people to be successful in these pursuits.

41. Maxfield, Grant, and Newby have worked together on many occasions and they have known each other for decades. They want to work together on subjecting H.B. 136 to referendum.

## FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983 – First Amendment: Severe Burden)

42. Plaintiffs reallege the allegations contained in the preceding paragraphs. Engaging with voters on matters of public concern, especially recently engaged legislation, amounts to core political speech.

43. Circulating petitions to subject recently engaged legislation to referendum or to propose ballot initiatives constitutes core political speech.

44. Restricting the ability of initiative and referendum sponsors to pay petition circulators based on the number of signatures gathered imposes a severe burden on the ability of sponsors to engage in core political speech.

45. Additionally, Utah already imposes a significant hurdle on initiative and referendum sponsors to gain access to the ballot by requiring signatures of at least 8% of active votes in 26 of the state's 29 senate districts for initiatives and 15 of 29 counties for referendums.

46. H.B. 136 imposes a severe burden on access to the ballot by combining that high signature threshold with restrictions on how sponsors can pay for signature gathering.

47. The State of Utah lacks a sufficient basis for imposing this requirement on initiative and referendum signature gathering.

48. H.B. 136 violates the U.S. Constitution.

## SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983 – First Amendment *and Fourteenth Amendment*: Anonymous Speech/Compelled Speech)

49. Plaintiffs reallege the allegations contained in the preceding paragraphs.

50. H.B. 136 requires that paid circulators' badges identify themselves by a unique number provided by a governmental entity and that the badge identify themselves as a paid circulator and the entity paying them to circulate the petition.

51. Under Supreme Court precedent, individuals have the constitutional right to engage in anonymous speech, including in circulating petitions to fellow citizens.

52. Further, individuals have the right to be free from compelled governmental speech.

53. H.B. 136 violates Plaintiffs' constitutional rights by requiring them to disclose that they are engaging in this particular form of political speech and denying them the right to engage in anonymous political speech.

54. Under Supreme Court precendent, individuals have the constitutional right to be free from compelled speech including the right to be free from compulsory speech concerning the fiscal impact and how to remove one's signature from a petition.

55. H.B. 136 additionally violates equal protection where it compels speech when no similar requirement applies to volunteer signature gatherers.

56. The State of Utah lacks a sufficient basis for depriving Plaintiffs of these rights.

## THIRD CAUSE OF ACTION
### (42 U.S.C. § 1983 – Vagueness-- *First Amendment and Fourteenth Amendment: Compelled Speech*)

57. Plaintiffs reallege the allegations contained in the preceding paragraphs.

58. H.B. 136, codified in Utah Code Section 20A-7-104(1) prohibits a person from paying a signature gather "based on a rate per signature, on a rate per verified signature, or on the initiative or referendum qualifying for the ballot."

59. The law further provides in Section 20A-7-104(2) that a "person who pays a person to gather signatures under this section shall base the payment solely on an hourly rate."

60. H.B. 136 imposes significant and severe penalties on anyone who violates this section.

61. However, the law is unclear as to what it means to "base the payment solely on an hourly rate."

62. If the only permitted method of payment is an unchanging hourly rate, then Section 20A-7-104(1) is superfluous.

63. It would appear, therefore, that there are acceptable methods of fluctuating hourly rates.

64. The law may allow a higher retroactive hourly rate for verified signatures, which would still be an hourly rate, but tied to the percentage of verified signatures.

65. Alternatively, the law may prohibit it.

66. Because the law criminalizes violations and imposes severe penalties, including losing the right to vote, this vagueness violates the U.S. Constitution.

67. HB 136's requirement that the signature gatherer wait for the individual to read the initiative/referendum is unclear whether the gatherer should instruct the potential signer to read it and how long the gatherer should wait for the potential signatory to read it. A person who violates this section is guilty of a class B misdemeanor but it is not clear what exact behavior would violate this provision.

68. Under Supreme Court precedent states must not compel specific speech and discriminate against similarly situated individuals.

69.     The law criminalizes activity when it cannot be reasonably determined what specific activity is in violation of the law.  Such a law is unconstitutionally vague and void. In addition, it compels only paid signature gatherers but not volunteers to require reading of the petition.

70.     H.B. 136 violates the U.S. constitution in creation of a vague statute and by forcing only certain types of signature gatherers to engage in compelled speech.

## FOURTH CAUSE OF ACTION
### (42 U.S.C. § 1983 – Equal Protection Clause)

71.     Plaintiffs reallege the allegations contained in the preceding paragraphs.

72.     H.B. 136 distinguishes between signature gathering for ballot initiatives and referenda and signature gathering for candidates.

73.     The law implicates fundamental rights and, therefore, strict scrutiny applies.

74.     The State of Utah cannot offer a sufficiently compelling justification for drawing this distinction between signature gathering for candidates versus for initiatives and referenda.

75.     Even absent strict scrutiny, the distinction drawn in H.B. 136 cannot survive even rational basis review.

76.     As such, H.B. 136 violates the Equal Protection Clause.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this court:

77.     Issue an injunction enjoining enforcement of H.B. 136;

78.     Issue a declaratory judgment that H.B. 136 violates Plaintiffs' constitutional rights;

79.     Order Defendants to pay to Plaintiffs their costs and reasonable attorney fees under 42 U.S.C. § 1988(b); and

80.     Order any additional relief the court deems just.

RESPECTFULLY SUBMITTED this 20th day of July, 2021.

/S/ JOEL BAN
BAN LAW OFFICE P.C.
P.O. BOX 118
SALT LAKE CITY, UT 84110
801 532 2447

CERTIFICATE OF SERVICE PLAINTIFF'S FIRST AMENDED COMPLAINT. Plaintiffs filed the foregoing onto the Court's CM/ECF system.

DATED: July 20, 2021

Counsel for Plaintiff

/s/ Joel Ban

Ban Law Office P.C.
P.O. Box 118
Salt Lake City, UT 84110
801-532-2447
joel@banlawoffice.com